CENTRAL BOCACHICA, INC., demandante y apelada, *v.* TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7786.—*Sometido:* Noviembre 7, 1938. *Resuelto:* Noviembre 17, 1938.

*Hon. Procurador General B. Fernández García* y *Vicente Palés Matos, Procurador General Auxiliar,* abogados del apelante; *Vicente Zayas Pizarro,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Los hechos de este caso, conforme aparecen de las alegaciones, pueden resumirse así: Que la Central Bocachica, Inc., con el objeto de asegurar a sus obreros durante el año fiscal 1932–33, solicitó y obtuvo de la Comisión Industrial, en 25 de octubre de 1932, la póliza número 8294, habiendo convenido con el tasador asegurador de la Comisión Industrial, Sr. José G. Salgado, que la cuota o prima se pagaría en plazos mensuales comenzando el 31 de octubre de 1932. Que la demandante remitió el primer plazo de la cuota, montante a $990, pero el Tesorero de Puerto Rico exigió que el pago de la prima se verificase por semestres adelantados, y en armonía con esta disposición devolvió a la demandante el cheque número 7576 expedido por ella a favor del Tesorero de Puerto Rico por la indicada suma de $990. Que en este estado continuó la situación hasta el 13 de abril de 1933 en que, habiendo pasado la Central Boca Chica a poder de Wirshing & Co., S. en C., solicitó asegurarse en el Fondo del Estado hasta junio 30 del mencionado año, lo que se llevó a efecto mediante el pago de la prima correspondiente. Que el demandado rechazó todos los ofrecimientos de la demandante para pagar la prima mediante pagos mensuales y que al llegar el 13 de abril de 1933, el demandado también se negó a aceptar de la demandante el pago íntegro de la prima, con intereses y recargos, alegando el Tesorero que por no haber pagado la demandante su cuota o prima por adelantado se había convertido en un patrono no asegurado con obligación

de pagar no sólo la cuota correspondiente a un patrono asegurado, si que también las demás indemnizaciones y penalidades que impone la ley a todo patrono no asegurado. Congruente con su opinión, el Tesorero de Puerto Rico, por conducto del colector de rentas internas, embargó propiedad mueble de la demandante para satisfacer la suma de $6,106.80, que incluye la cuota o prima con más recargos y apremios, cobrando además la suma de $10,086.50, que representa el montante de las distintas indemnizaciones por accidentes del trabajo concedidas y pagadas a varios obreros de la demandante durante el período comprendido entre el 14 de octubre de 1932 a 13 de abril de 1933, incluyendo dicha suma gastos de liquidación y recargos, practicándose notificaciones de embargo oportunamente servidas a la demandante y habiéndosele remitido por la Comisión Industrial los correspondientes avisos de pago de dichas liquidaciones.

Los hechos esenciales de las dos demandas enmendadas complementarias han sido sustancialmente aceptados por el demandado, discrepando las partes en cuanto al efecto legal de los hechos, pues mientras la demandante sostiene que la póliza número 8294 era válida y que el tasador asegurador del Gobierno, Sr. José G. Salgado, estaba autorizado para convenir el pago de la cuota mediante pagos mensuales, alega el demandado que tal póliza no tuvo existencia legal y que el Sr. Salgado no estaba facultado para celebrar el convenio alegado por la demandante. De cualquier forma, el Tesorero de Puerto Rico rechazó la póliza y devolvió el primer pago que intentó hacerle la demandante, de este modo quedando inexistente la referida póliza 8294.

La corte inferior enfoca correctamente la cuestión en controversia cuando en su opinión plantea el problema en los siguientes términos:

"La cuestión de derecho a resolver en este pleito es la siguiente:
"Si un patrono *no asegurado,* además de pagar las indemnizaciones por accidentes ocurridos a sus obreros durante el período en que

él *no estaba asegurado,* debe también pagar al Tesorero de Puerto Rico la cuota o prima de una póliza de seguro que cubra el mismo período de tiempo en que el patrono no estaba asegurado y en el cual ocurrieron los accidentes cuyo importe él pagó.''

Luego de analizar y comparar la corte sentenciadora las distintas secciones de la ley número 85 de 1928 (Leyes de ese año, pág. 631) que estimó aplicables y de citar el artículo 1043 del Código Civil (edición de 1930), llega a la siguiente conclusión:

''Que la Central Bocachica, Inc., no estaba obligada por disposición alguna de la ley número 85 de 1928, a pagar la cuota o prima por el período de tiempo en que era un patrono no asegurado, *o sea por el período transcurrido desde octubre 14 de 1932 a abril 13 de 1933, y por tanto que la suma total de $6,016.79 pagada bajo protesta* por la Central Bocachica, Inc., al Tesorero de Puerto Rico, según el recibo número 334 en enero 29, 1934, debe ser reintegrada por el demandado a la demandante, más los intereses de dicha suma a razón del 6% anual desde la fecha de la radicación de la demanda ante esta Corte, o sea desde el 2 de octubre de 1934, (Sección 3 de la Ley núm. 8 de 19 de abril de 1927.)''

En armonía con la conclusión antes transcrita dictó su sentencia condenando al Tesorero de Puerto Rico a reintegrar a Wirshing & Co., S. en C., como subrogada en todos los derechos y acciones de la primitiva demandante Central Bocachica, Inc., la suma de $6,016.79 que fué pagada bajo protesta por dicha Central el 29 de enero de 1934, más intereses a razón del 6 por ciento anual desde la radicación de la demanda original el 2 de octubre de 1934, sin especial condenación de costas.

Contra esta sentencia ambas partes apelaron, solicitando ahora la demandante en dos mociones sucesivas que consideraremos conjuntamente que desestimemos la apelación del demandado por los siguientes fundamentos:

1. Porque el demandado no se acogió ni al procedimiento de transcripción de evidencia ni tampoco al de pliego de excepciones y exposición del caso para elevar a este tribunal

la evidencia que tuvo ante sí la corte sentenciadora, ni tampoco ha convenido con la demandante en utilizar la transcripción de evidencia que se propone presentar en su recurso de apelación, no habiendo elevado el demandado, por tanto, en forma alguna la evidencia que se presentó en la corte inferior.

2. Porque la apelación interpuesta por el demandado apelante es frívola, y

3. Porque no radicó su alegato dentro del término que dispone el Reglamento de este tribunal.

Señalada la vista de las dos mociones de la demandante, comparecieron ambas partes el 7 del actual e informaron oralmente en apoyo de sus respectivas posiciones.

Consideraremos separadamente y en el orden establecido los tres motivos de desestimación alegados por la demandante apelada.

■ Al hacer el resumen de las alegaciones hemos expuesto los hechos que surgen de las mismas y hemos manifestado que las alegaciones esenciales de la demanda han sido sustancialmente aceptadas por el demandado, quedando reducida la cuestión a determinar, como lo hizo el juez de la corte inferior, si un patrono *no asegurado,* además de pagar las indemnizaciones por accidentes ocurridos a sus obreros *durante el período en que él no estaba asegurado,* debe pagar también la cuota o prima de una póliza o seguro que cubra el mismo período de tiempo en el cual ocurrieron los accidentes cuyas compensaciones pagó. En otras palabras, si el patrono no asegurado puede considerarse como su propio asegurador durante el tiempo en que no existió póliza alguna.

Toda la controversia se reduce a una cuestión de derecho, pues surgiendo de las alegaciones de la propia demandante que el Tesorero rechazó la póliza 8294 y se negó a recibir, y en efecto no recibió, los pagos mensuales ofrecidos por la demandante, claro es que ésta fué un patrono no asegurado durante el período comprendido entre el 14 de octubre de

1932 y el 13 de abril de 1933, como veremos más adelante al considerar el segundo motivo de desestimación. Siendo ello así, no necesitamos tener ante nos, para la completa resolución de este caso, la evidencia que tuvo ante sí la corte sentenciadora.

Por consiguiente, no existe el primer motivo de desestimación.

Pasemos ahora al segundo.

█ La apelación interpuesta por el demandado no es frívola. Así lo demuestra la sección 36 de la Ley número 85, de 14 de mayo de 1928, supra, que dice así:

"Sección 36.—El Superintendente de Seguros ordenará el embargo de bienes de cualquier patrono que dejare de cumplir la obligación de asegurar a sus obreros, por una suma suficiente para cubrir el importe de cualquier indemnización que pudiere decretarse por la Comisión. Este embargo quedará vigente *hasta que el patrono acredite haber cumplido su obligación de asegurarse y se liquiden las responsabilidades contraídas por él con sus obreros durante el tiempo que no estuvo asegurado, o afiance el cumplimiento de las mismas,* a satisfacción del Superintendente de Seguros. Este embargo se practicará como si se tratara del cobro de contribuciones y se hará efectivo del mismo modo una vez que haya recaído resolución final en el asunto y tendrá sobre los bienes embargados la preferencia concedida por el Código Civil a las primas de seguro." (Bastardillas nuestras.)

De acuerdo con el precepto antes transcrito, el embargo ordenado por el Superintendente de Seguros quedará vigente hasta que el patrono acredite: (*a*) haber cumplido su obligación de asegurarse (lo que hizo la demandante al pagar bajo protesta la cantidad de $6,016.79), y (*b*) se liquiden las responsabilidades contraídas por el patrono con sus obreros durante el tiempo que no estuvo asegurado o afiance el cumplimiento de las responsabilidades a que se refiere el párrafo *b* que precede, a satisfacción del Superintendente de Seguros.

Parece evidente que si el patrono no asegurado no viene obligado a pagar la cuota o prima de su póliza durante el

período durante el cual ha pagado indemnizaciones a sus obreros como patrono no asegurado, resultaría entonces que estaríamos concediendo al patrono el derecho de ser su propio asegurador durante ese tiempo, sin cumplir él con los requisitos que exige la ley para·que un patrono pueda ser su propio asegurador.

La demandante nos pide en su alegato que no entremos a considerar los méritos del caso al resolver la cuestión de frivolidad por ella alegada, pero es imposible determinar si una apelación es o no frívola sin considerar siquiera someramente los méritos del caso. Nos limitamos, pues, a fin de no prejuzgar la apelación interpuesta por la demandante, a señalar la sección 36, supra, para que aparezcan así las razones que tenemos para creer que la apelación interpuesta por el demandado no es enteramente frívola como pretende la demandante.

▄ Es cierto, como alega la demandante, que el alegato del demandado apelante no se radicó hasta el mismo día señalado para la vista de las mociones de desestimación. A este efecto dispone el artículo 60 del Reglamento de este Tribunal:

"Si el apelante dejare de cumplir cualquiera de los deberes o requisitos que las leyes o estas reglas le impongan, el Tribunal *puede desestimar* de oficio la apelación en cualquier día o a moción de la parte apelada, previa notificación al apelante." (Bartardillas nuestras.)

Fácilmente se comprende que el carácter del artículo 60 antes transcrito, que autoriza la desestimación del recurso cuando el apelante no radique su alegato dentro del tiempo prescrito, es más bien admonitivo que preceptivo, y siendo ello así es discrecional en el tribunal denegar la desestimación por este motivo cuando a su juicio los fines de la justicia quedarían beneficiados viéndose el caso por sus propios méritos. Hemos visto que la apelación no es frívola,_ que la cuantía envuelta excede de $6,000, y que el caso, conforme

aparece de la opinión del juez sentenciador, con la cual convenimos en este particular, es de importancia. Habiéndose radicado el alegato el día de la vista de las mociones para desestimar y no habiéndose causado perjuicio alguno a la demandante por la dilación del apelante en presentar su alegato, entendemos que hacemos buen uso de nuestra discreción al denegar la desestimación por este motivo también.

*Por lo expuesto, procede denegar la desestimación de la apelación interpuesta por el demandado, sin perjuicio de considerar más detenidamente las cuestiones legales envueltas cuando resolvamos el caso en su fondo.*

El Juez Presidente Señor Del Toro no intervino.